

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 2 1 2019
for CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Feb 21, 2019

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHRISTAL FIELDS, | ) | |
| | ) | No. 95024-5 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF EARLY LEARNING | ) | Filed: FEB 2 1 2019 |
| | ) | |
| Respondent. | ) | |
| | ) | |

YU, J. — This case concerns the extent to which a criminal record may preclude a person from supporting herself through lawful employment in her chosen field. In 1988, petitioner Christal Fields pleaded guilty to attempted second degree robbery for trying to snatch a woman's purse. As a result, Fields was permanently disqualified from working at any licensed childcare facility in Washington pursuant to regulations promulgated by respondent Department of Early Learning (DEL). Fields raises state and federal constitutional challenges to these regulations, both facially and as applied to her. We decline to reach Fields's facial challenges and state constitutional arguments. However, we hold that DEL's

regulations prohibiting any individualized consideration of Fields's qualifications at the administrative level violate Fields's federal right to procedural due process as applied. We therefore reverse the Court of Appeals and remand for further administrative proceedings consistent with this opinion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant factual background as recounted by the Court of Appeals is undisputed:

> Fields grew up in a dysfunctional home environment with rampant drug abuse. At the age of 16, she became homeless and turned to prostitution and drugs. In 1988[, at age 22], Fields attempted to snatch a purse to help pay for her drug habit. She pleaded guilty to attempted second degree robbery.
>
> Fields continued to lead a troubled life until 2006 when she turned her life around by successfully completing a drug program. She has been clean and sober ever since. For two years she resided in group housing. During this time, she was promoted to resident manager because of her responsibility and commitment to working with others. Many support letters from employers and coworkers since then attest to Fields's character.
>
> On February 6, 2013, Fields submitted a portable background check to DEL. Based on the information Fields provided, DEL cleared Fields to work at a childcare facility. She worked in that childcare facility for six months after she received her background clearance. Fields loves working with children and has taken advantage of every available training opportunity to improve her skills.
>
> A local news report on childcare centers brought Fields's undisclosed criminal history to DEL's attention.

2

*Fields v. Dep't of Early Learning*, No. 75406-8-I, slip op. at 1-2 (Wash. Ct. App. Aug. 21, 2017) (unpublished) (footnote omitted), http://www.courts.wa.gov/ opinions/pdf/754068.pdf.

The licensing supervisor for DEL sent a notice of disqualification to Fields. The notice informed Fields that she was permanently disqualified, effective immediately, "meaning that you cannot work with or have unsupervised access to child care children." Clerk's Papers at 49. Fields appealed to the Office of Administrative Hearings (OAH). Fields also requested reconsideration by the licensing supervisor, pointing to both factual inaccuracies in the notice of disqualification and evidence of her rehabilitation. It does not appear from the record that Fields's request for reconsideration has been considered on its merits.

On appeal, DEL moved for summary judgment on the sole basis that in accordance with former WAC 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(1) (2015), "the appellant must be disqualified from having unsupervised access to children or obtaining a [childcare] license under [former] WAC 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(1) [(2015)] due to her 1988 conviction of attempted second degree robbery." *Id.* at 140. Fields did not challenge the fact of her 1988 conviction but contended that the disqualification regulations violate her constitutional right to due process of law, both facially and as applied. OAH determined that such questions were beyond the scope of its review and therefore granted summary judgment to DEL.

3

Fields petitioned for review in superior court, again arguing that the disqualification regulations violate her state and federal rights to procedural and substantive due process, both facially and as applied. DEL opposed Fields's arguments on the merits. The superior court dismissed the petition for review, determining that Fields had not met her burden of proving that the disqualification regulations are unconstitutional. The Court of Appeals affirmed in an unpublished opinion, and we granted Fields's petition for review. *Fields v. Dep't of Early Learning*, 189 Wn.2d 1031 (2018).

## ISSUE

Are DEL's permanent disqualification regulations unconstitutional, either facially or as applied to Fields?

## ANALYSIS

Fields contends that she is entitled to relief because "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied." RCW 34.05.570(3)(a). Specifically, she raises challenges based on the due process clauses of the state and federal constitutions, both facially and as applied.[1] U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. We review the constitutionality of agency rules de novo, using

---

[1] Amici also raise the state equal protection clause and equal rights amendment. WASH. CONST. art. I, § 12, art. XXXI. We decline to address these arguments because they are briefed only by amici and are unnecessary to the just resolution of this case.

4

the same standards that we use when reviewing the constitutionality of statutes.

*Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006). "Statutes

are presumed to be constitutional, and the burden to show unconstitutionality is on

the challenger." *Id.* The challenger can meet this burden only "if argument and

research show that there is no reasonable doubt that the statute violates the

constitution." *Id.*

We hold that DEL's regulations do violate federal procedural due process as

applied to Fields.[2] We therefore reverse the Court of Appeals.

A.    Background information regarding DEL

At the time of Fields's permanent disqualification, DEL was an

administrative agency within the executive branch that the legislature created in

response to "a shortage of high quality services and supports for children ages birth

to three and their parents and caregivers." Former RCW 43.215.005(2)(c) (2010).

In general, "[t]he primary duties of the department [were] to implement state early

learning policy and to coordinate, consolidate, and integrate child care and early

learning programs in order to administer programs and funding as efficiently as

possible." Former RCW 43.215.020(2) (2016).

---

[2] We decline to address Fields's state constitutional arguments because the briefing on
those arguments is insufficient "to insure that . . . our decision will be made for well founded
legal reasons." *State v. Gunwall*, 106 Wn.2d 54, 62-63, 720 P.2d 808 (1986). We also decline to
address her federal substantive and facial due process arguments because they are unnecessary to
the resolution of this case.

Effective July 1, 2018, DEL became part of the newly created Department of Children, Youth, and Families (DCYF). LAWS OF 2017, 3d Spec. Sess., ch. 6. However, Fields's disqualification was effected by DEL, based solely on the DEL regulations then in effect. Given this procedural history, we decline to speculate on how a factually similar case would (or should) be handled by DCYF in the future.[3]

The legislature specifically tasked DEL with administering a licensing program for childcare facilities. Former RCW 43.215.200(3)-(4) (2015). In order to receive and maintain a license to operate, childcare facilities were required to comply with applicable statutes and DEL regulations and were subject to regular inspections and mandatory reporting requirements. Operating an unlicensed childcare facility is a misdemeanor. Former RCW 43.215.340 (2006), *recodified as* RCW 43.216.365.

As part of the licensing program, DEL is required to run background checks on anyone who wants to work in a childcare facility in order to determine whether

---

[3] For the first time at oral argument, DEL contended that if Fields were to obtain a certificate of restoration of opportunity (CROP) pursuant to chapter 9.97 RCW, she would be entitled to an individualized determination by DCYF, making a decision on her constitutional arguments unnecessary. Wash. Supreme Court oral argument, *Fields v. Dep't of Early Learning*, No. 95024-5 (May 8, 2018), at 31 min., 48 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. After reviewing supplemental briefing from the parties on this issue, we decline to address its merits. Neither DCYF nor the CROP statute existed when Fields was permanently disqualified, and any effect a CROP might have on Fields's situation in the future is entirely hypothetical at this time.

the "individual is of appropriate character, suitability, and competence to provide child care and early learning services to children." Former RCW 43.215.215(1) (2011). Pursuant to its rule making authority, DEL adopted administrative regulations for running these background checks.

DEL's regulations provide that "[a] subject individual who has a background containing any of the permanent convictions on the director's list, [former] WAC 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(1), will be permanently disqualified from providing licensed child care, caring for children or having unsupervised access to children in child care." Former WAC 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(1), *recodified as* WAC 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. This "director's list" includes 50 types of permanently disqualifying convictions, one of which is "[r]obbery." Former WAC 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, *recodified as* WAC 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. For purposes of the director's list, Fields's conviction for attempted second degree robbery is treated in the same manner as a completed offense and is therefore permanently disqualifying. Former WAC 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(1)(c) (2015), *recodified as* WAC 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.

A person with a permanently disqualifying conviction has no recourse at the administrative level. DEL regulations prohibit any administrative decision-maker from finding any regulation invalid or unenforceable and further prohibit reconsideration of permanent disqualifications on a case-by-case basis. WAC 170-

03-0230(1); former WAC 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(5) (2015), *recodified as* WAC 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.

B.     Fields does properly raise a procedural due process challenge

The due process clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Fields's right to pursue the lawful career of her choice without arbitrary interference by the State is a well-established "liberty interest protected by the due process clause." *Amunrud*, 158 Wn.2d at 219. The right to due process has both procedural and substantive components. *Id.* at 216. DEL, however, contends that Fields's due process claim is substantive only, with no true procedural component. We disagree. While Fields does raise a substantive challenge, she also raises a procedural one.

"[P]rocedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation" of a protected interest. *Id.* To determine whether a particular procedure for providing notice and an opportunity to be heard is constitutionally adequate, we must assess the risk of erroneous deprivation in light of the competing interests at stake. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). To do so, we must first recognize that there are different ways in which a deprivation might be "erroneous."

For instance, a deprivation might be "erroneous" based on a statutory or regulatory violation, where there is an error in applying the law as written to the facts presented. 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.6(a)(i), at 722 (5th ed. 2012). There is no question that Fields received sufficient procedures to guard against this type of error. The validity of her underlying conviction is unchallenged, and DEL's regulations, as written, require Fields's permanent disqualification on the sole basis of that conviction.

Nevertheless, a deprivation based on a constitutional violation is no less "erroneous" than a deprivation based on a statutory or regulatory violation. A deprivation thus might be "erroneous" even though the law as written was correctly applied to the facts presented because the law, as applied, is unconstitutional. This is the type of error Fields asserts, claiming that her permanent disqualification based solely on a 30-year-old attempted second degree robbery conviction constitutes an arbitrary deprivation of her protected interest in pursuing lawful employment in her chosen field. Fields has a procedural due process right to have this claim heard "'at a meaningful time and in a meaningful manner,' appropriate to the case." *Amunrud*, 158 Wn.2d at 216 (internal quotation marks omitted) (quoting *Mathews*, 424 U.S. at 333).

DEL's regulations prohibit any consideration of Fields's claim at the administrative level. Therefore, the only procedural mechanism available to her is judicial review pursuant to the Administrative Procedure Act (APA), chapter 34.05 RCW. To resolve Fields's as-applied procedural due process claim, we must determine whether APA review is sufficient to protect against an erroneous deprivation of Fields's protected interest in light of the specific circumstances presented.

C.     In light of Fields's particular circumstances, she has a procedural due process right to an individualized determination at the administrative level

Fields claims that as applied to her, DEL's regulations forbidding a case-by-case determination of whether she is qualified to work in licensed childcare created an unacceptably high risk of erroneous deprivation in violation of her federal right to procedural due process. In the particular circumstances presented by Fields's case, we agree.

Our analysis of Fields's federal procedural due process claim is guided by the *Mathews* test, which requires us to consider the following:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

10

424 U.S. at 335. The parties do not dispute that Fields has a strong interest in pursuing her chosen profession without arbitrary interference by the State, while DEL has a strong interest in protecting children who are taught or cared for in licensed facilities without creating undue administrative burdens. It is the second *Mathews* factor that is primarily at issue: the risk of erroneous deprivation and the probable value of additional procedural safeguards.

In addressing this issue, we focus on the as-applied nature of Fields's challenge, which "is characterized by a party's allegation that application of the statute in the *specific context* of the party's actions or intended actions is unconstitutional." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004) (emphasis added). Furthermore, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). We therefore must consider the risk of erroneous deprivation and the competing interests at stake in light of Fields's particular circumstances.

1.      Fields faces an unusually high risk of erroneous deprivation

Fields has a protected interest, but not a fundamental right, to pursue her chosen, lawful occupation. *Amunrud*, 158 Wn.2d at 222. Therefore, if DEL's regulations prevent her from pursuing her chosen occupation without a rational

11

basis for doing so, she has been erroneously deprived of a protected interest. *Id.*
Here, a number of factors combine to put Fields at an unusually high risk of erroneous deprivation.

First, Fields's conviction is over 30 years old, but DEL's regulations treat her identically to a person who has recently committed multiple acts of child abuse. DEL's regulations also give no weight to the fact that Fields was 22 years old at the time of her offense, while "psychological and neurological studies show[ ] that the 'parts of the brain involved in behavior control' continue to develop well into a person's 20s." *State v. O'Dell*, 183 Wn.2d 680, 691-92, 358 P.3d 359 (2015) (footnote omitted) (internal quotation marks omitted) (quoting *Miller v. Alabama*, 567 U.S. 460, 472, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). And at the time of her offense, Fields was "addicted to drugs, in domestic violence relationships, [and] in and out of homelessness." Report of Proceedings (RP) at 9. It is undisputed that Fields has overcome these challenges. Nevertheless, DEL's regulations make her 30-year-old conviction a permanent barrier to pursuing employment in her chosen field. Because Fields's sole disqualifying conviction occurred long ago under circumstances that no longer exist, it is highly likely that her permanent disqualification is erroneously arbitrary.

In addition to the passage of time in Fields's particular case, DEL's regulations are unusually "onerous" as compared to other laws relating to

12

disqualification for unsupervised contact with children based on prior convictions. Br. of Amicus Curiae Civil Survival in Supp. of Pet. for Review at 5. For instance, the federal government requires the State to permanently disqualify individuals from licensed childcare work based on certain violent and sexual crimes. 42 U.S.C. § 9858f(c)(1)(D)-(E).[4] *"Robbery is not one of those crimes." Fields*, No. 75406-8-I, slip op. at 9 (emphasis added). This inconsistency between state and federal law increases the risk of an arbitrary, erroneous deprivation based solely on Fields's attempted second degree robbery conviction.

Washington law creates another inconsistency by providing that Fields's conviction would not permanently bar her from obtaining a license as a foster care provider. In contrast to the limited role played by licensed childcare facilities, "[f]oster parents are responsible for the protection, care, supervision, and nurturing of the child in placement." RCW 74.13.330. Yet Washington law provides that a conviction of robbery results in only a five-year disqualification from foster care license eligibility. DSHS Secretary's List of Crimes and Negative Actions for Use by Children's Administration (Mar. 2017), https://www.dshs.wa.gov/sites/

---

[4] The federal statute requires permanent disqualification of anyone who has been convicted of the following felony offenses: "murder," "child abuse or neglect," "a crime against children, including child pornography," "spousal abuse," "a crime involving rape or sexual assault," "kidnapping," "arson," and "physical assault or battery." 42 U.S.C. § 9858f(c)(1)(D)(i)-(viii). It also requires permanent disqualification if the person "has been convicted of a violent misdemeanor committed as an adult against a child, including the following crimes: child abuse, child endangerment, sexual assault, or of a misdemeanor involving child pornography." 42 U.S.C. § 9858f(c)(1)(E).

default/files/CA/pub/documents/secretaryslist.pdf [https://perma.cc/SJ7P-HG8J];

*see also* former WAC 388-06A-0170(1)(a)-(e) (2015), *recodified as* WAC 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(1)(a)-(e). These inconsistent standards make it highly likely that a person convicted of attempted second degree robbery will be arbitrarily disqualified from working with children in licensed childcare even though the State would view that person as entirely fit to work with children as a foster parent.

Finally, the undisputed facts underlying Fields's 1988 conviction do not indicate that she was likely to pose a danger to children for the rest of her life. At the age of 22, Fields "tried to grab a woman's purse away from her in front of a Bartell[ ] Drugs." RP at 4. At the time, "[s]he was addicted to drugs, in domestic violence relationships, [and] in and out of homelessness." *Id.* at 9. There is no indication that any children were either victims of or witnesses to the attempted crime. And because Fields was not convicted of first degree robbery, we know that she was not armed with a deadly weapon, did not display anything that appeared to be a deadly weapon, and did not cause any bodily injury to the victim. Former RCW 9A.56.200(1) (1975). As the superior court judge in this case noted, Fields's actions "barely met perhaps the statutory elements of robbery in the second degree at the time."[5] RP at 26. Indeed, she was not even successful in

---

[5] To the extent that there are other factual circumstances underlying Fields's conviction that are not in the record before us, such facts may be considered when Fields is provided with an individualized determination of her qualifications.

grabbing the purse. DEL's regulations, however, treat Fields's inchoate attempt identically to a completed crime.

Without question, prior criminal convictions are relevant considerations when evaluating a person's future ability to care for vulnerable populations such as children. However, Fields's conviction is based on an offense that was committed 30 years ago, when she was under 25 years old. Her attempted second degree robbery conviction does not permanently disqualify her from licensed childcare work as a matter of federal law and does not even permanently disqualify her from being a licensed foster care provider as a matter of state law. The offense itself did not involve any children in any way, did not involve any deadly weapons, and did not inflict any bodily injury. In light of these circumstances, and keeping in mind that DEL's designated task is to determine whether the individual is of appropriate character, suitability, and competence to provide childcare under former RCW 43.215.215(1), it is difficult to see how the fact of the single conviction at issue here should permanently disqualify Fields as unfit to work in a licensed childcare facility.

This is not to say that Fields is necessarily qualified for such work. The notice of disqualification sent by DEL's licensing supervisor raised a number of concerns that, taken together, may still lead to Fields's disqualification. However, using Fields's 1988 attempted second degree robbery conviction as the sole basis

15

for her permanent disqualification with no opportunity for an individualized determination presents an unusually high risk of arbitrary, erroneous deprivation. In light of this unusually high risk, the additional procedure of an individualized determination at the administrative level would be extremely valuable.

2.    An individualized administrative determination of Fields's qualifications is invaluable to mitigating the risk of erroneous deprivation

As noted above, DEL regulations explicitly prohibit any individualized consideration of the qualifications of a person with a permanently disqualifying conviction. WAC 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(1); former WAC 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(5). Fields's only recourse was therefore to seek judicial review of her disqualification pursuant to the APA. In these particular circumstances, APA review does not provide sufficient procedural protections given the high risk of erroneous deprivation.

To obtain judicial review, Fields was required to comply with the APA's strict requirements for filing and serving her petition. RCW 34.05.542. To prevail on the merits, she faced the extraordinarily high burden of showing beyond a reasonable doubt that DEL's regulations were unconstitutional. *Amunrud*, 158 Wn.2d at 215. The only relief Fields has ever asked for is an individualized determination of her qualifications at the administrative level. She has been challenging her disqualification in court since October 2015, going through three levels of judicial review, unable to work (much less advance) in her chosen field

the entire time. The added time and expense involved in the judicial review process, in addition to the difficulty in obtaining relief, raises significant concerns about its adequacy in light of the high risk of erroneous deprivation presented here. *Mathews*, 424 U.S. at 341-42; *see* dissent at 8-9.

Meanwhile, an individualized determination would drastically reduce the risk of erroneous deprivation in Fields's case. Properly and fairly conducted, an individualized determination will ensure that even if Fields is ultimately disqualified, it will not be arbitrary but, instead, based on her "character, suitability, and competence to provide child care and early learning services to children." Former RCW 43.215.215(1).

We recognize DEL's interests, but they are not compromised by this as-applied challenge. DEL's primary interest, protecting children, is not implicated at all. Whether Fields is qualified to work in licensed childcare facilities will still be decided with the paramount goal of protecting children. The procedure on remand need not be unusual or burdensome. DEL already has regulations governing individual determinations of those with troubling past behavior but without any disqualifying convictions. *See* former WAC 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(4), (7); former WAC 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(1) (2015), *recodified as* WAC 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; former WAC 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 (2015), *recodified as* WAC 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; former WAC 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(1)-(4). Fields is entitled only to be heard in accordance with existing procedures, where

17

her attempted second degree robbery conviction is considered along with the rest of her history, both favorable and unfavorable. If there is a nonarbitrary basis to believe that Fields's qualification would present a danger to childcare children, she will remain disqualified, fully protecting DEL's primary interest in protecting children.

DEL also has a legitimate interest in easing the administrative burdens that would come with requiring a case-by-case evaluation of every person who seeks qualification to work in licensed childcare facilities. *Weinberger v. Salfi*, 422 U.S. 749, 784, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975). However, that interest is extremely minimal given the as-applied nature of this challenge. We do not hold that every person with a permanently disqualifying conviction must be given an individualized administrative hearing. We hold only that in light of the unusually high risk of erroneous deprivation in Fields's particular case, the additional protection of an individualized determination of her qualifications is required as a matter of procedural due process.[6]

---

[6] We respectfully disagree with the dissent's suggestion that we should uphold DEL's procedural regulations as applied to Fields to avoid the added burdens that will result from others seeking relief pursuant to our decision today. *See* dissent at 9-10. To the extent that DEL's procedures create a high likelihood of producing arbitrary results in other cases, these added burdens are constitutionally required.

18

CONCLUSION

We do not question the authority of administrative agencies to set generally applicable regulations governing the qualifications of people who work with vulnerable populations such as children. But that authority cannot preclude the possibility that the regulations may nevertheless be unconstitutional as applied to a particular case. As applied to this case, DEL's regulations created an intolerably high risk of erroneously depriving Fields of her protected interest in pursuing her chosen, lawful occupation. Addressing Fields's qualifications on an individualized basis at the administrative level is invaluable to reducing that risk, and in this as-applied challenge, the value of such a procedure is not outweighed by any countervailing government interest. We therefore reverse the Court of Appeals and remand for further administrative proceedings, at which Fields's entire history and the totality of her circumstances must be considered on an individualized basis.

_____ Yu, J.

WE CONCUR:

_____ Stephens, J.

_____ González, J.

Madsen, J. _____

_____

No. 95024-5

GORDON McCLOUD, J. (concurring)—I agree with the dissent insofar as it concludes that the Department of Early Learning (DEL)[1] did not violate Christal Fields' federal right to *procedural* due process. U.S. CONST. amend. XIV, § 1. But I disagree with the dissent's resolution of Fields' *substantive* due process claim. I believe that DEL violated Fields' federal right to substantive due process and would reverse the Court of Appeals on this ground. *Id.* Thus, while I disagree with the lead opinion's reasoning, I concur in its result. Should DEL want to disqualify Fields for other reasons, it must go through additional administrative proceedings and comply with procedural and substantive due process. But DEL may not permanently disqualify Fields based solely on her 1988 conviction because doing so violates substantive due process.

"Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate

---

[1] The Department of Early Learning is now part of the Department of Children, Youth, and Families, but I will refer to it as DEL in this concurrence.

1

procedures." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 218-19, 143 P.3d 571 (2006) (citing *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994)). "[P]ursuit of an occupation or profession is a liberty interest protected by the due process clause." *Id.* at 219 (citing *Conn v. Gabbert*, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "Because the right to pursue a trade or profession is a protected right but not a fundamental right, we apply a rational basis test." *Id.* at 222. Under this test, we determine whether the challenged regulations are rationally related to a legitimate state interest. *Id.*[2] Although rational basis review is "the most relaxed form of judicial scrutiny," *id.* at 223 (citing *State v. Shawn P.*, 122 Wn.2d 553, 859 P.2d 1220 (1993)), it is not "'"toothless,"'" *Nielsen v. Dep't of Licensing*, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013) (quoting *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 50 L. Ed. 2d 389 (1976) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S. Ct. 2755, 49 L. Ed. 2d 651 (1976))).

Fields argues that DEL's regulation violated her federal right to substantive due process, both facially and as applied. To succeed on her facial challenge, Fields

---

[2] *See* JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 11.4, at 370, § 14.4, at 601 (4th ed. 1991), *Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1991); *Seeley v. State*, 132 Wn.2d 776, 795, 940 P.2d 604 (1997); *In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 963 P.2d 911 (1998).

must show that "no set of circumstances exists in which the [regulation], as currently written, can be constitutionally applied." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004) (citing *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 282 n.14, 4 P.3d 808 (2000) (citing *In re Det. of Turay*, 139 Wn.2d 279, 417 n.27, 986 P.2d 790 (1999))). To succeed on her as-applied challenge, Fields must show that the regulation is unconstitutional as applied to her, even if it could be constitutionally applied in a different circumstance. *Id.* at 668-69.

One can certainly imagine a set of circumstances in which DEL may apply the regulation at issue without offending the United States Constitution. DEL has a legitimate interest in "safeguard[ing] and promot[ing] the health, safety, and well-being of children receiving child care and early learning assistance, which is paramount over the right of any person to provide care." Former RCW 43.215.005(4)(c) (2010). DEL can advance this interest by, for example, preventing a person recently convicted of multiple attempted robberies from working at a licensed childcare facility. *See* dissent at 15-16 (explaining that second degree robbery is a serious offense against another person). Thus, Fields' *facial* substantive due process claim must fail. But the challenged regulation, *as applied to Fields*, is not rationally related to any legitimate state interest.

3

While DEL undeniably has a legitimate interest in safeguarding and promoting the health, safety, and well-being of children, this legitimate interest is not at all fostered by permanently barring a person who was convicted of attempted second degree robbery over 30 years ago at the age of 22. The lead opinion aptly explains why:

> Fields's conviction is based on an offense that was committed 30 years ago, when she was under 25 years old. Her attempted second degree robbery conviction does not permanently disqualify her from licensed childcare work as a matter of federal law and does not even permanently disqualify her from being a licensed foster care provider as a matter of state law. The offense itself did not involve any children in any way, did not involve any deadly weapons, and did not inflict any bodily injury.[3] In light of the circumstances, and keeping in mind that DEL's designated task is to determine whether the individual is of appropriate character, suitability, and competence to provide childcare under former RCW 43.215.215(1), it is difficult to see how the fact of the single conviction at issue here should permanently disqualify Fields as unfit to work in a licensed childcare facility.

Lead opinion at 15; *see also id.* at 11-15.

But the lead opinion does so under its analysis of *procedural* due process. *Id.*

As the dissent notes, the lead opinion "conflate[s] procedural and substantive due

---

[3] In response to the dissent's criticism of the lead opinion's logic on this point, dissent at 15-16, I note that it is only the necessarily adjudicated facts of the crime that we can consider at this point, *see Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and those necessarily adjudicated facts do not involve children, deadly weapons, or bodily injury.

4

process." Dissent at 1. "Procedural due process guarantees only that individuals

have notice and the opportunity to be heard to contest whether the rule does apply

to them, not whether it should." *Id.* at 3. Everyone agrees that the regulation at issue

bars Fields from working at a licensed childcare facility. Lead opinion at 9; dissent

at 6. The issue here is whether barring Fields because of her conviction from 1988

is rationally related to a legitimate state interest. And that is a question of *substantive*

due process. *See* dissent at 6-7.

DEL also "has a legitimate interest in avoiding the administrative burden of

holding an individualized inquiry in every case." *Id.* at 14; *see also* lead opinion at

18. But we do not allow constitutional violations merely because it would be

burdensome to prevent them:

> "The establishment of prompt efficacious procedures to achieve
> legitimate state ends is a proper state interest worthy of cognizance in
> constitutional adjudication. But the Constitution recognizes higher
> values than speed and efficiency. Indeed, one might fairly say of the
> Bill of Rights in general, and the Due Process Clause in particular, that
> they were designed to protect the fragile values of a vulnerable citizenry
> from the overbearing concern for efficiency and efficacy that may
> characterize praiseworthy government officials no less, and perhaps
> more, than mediocre ones."

*Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 433, 511 P.2d 1002

(1973) (quoting *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S. Ct. 1208, 31 L. Ed. 2d

551 (1972)). Regardless, in my view, DEL is not required to hold an individualized

inquiry in every case. If DEL can write a bright-line regulation that seldom, if ever, violates substantive due process as applied, it can avoid individualized inquiries in most, if not all, cases. In drafting a rule that is less likely to violate a person's substantive due process rights, DEL might consider how old the person was when he or she committed the crime and the amount of time that has elapsed since the crime was committed.

In sum, the challenged regulation, as applied to Fields, is not rationally related to a legitimate state interest. The regulation therefore amounts to arbitrary and capricious government action and violates Fields' federal right to substantive due process. As such, I would reverse the Court of Appeals and hold that DEL may not bar Fields solely because of a conviction for attempted second degree robbery from 1988 when she was 22 years old. I therefore respectfully concur.

Good McCloud, J.

No. 95024-5

FAIRHURST, C.J. (dissenting)—I dissent because Christal Fields has failed to meet her burden of showing that the Department of Early Learning (DEL)[1] violated her due process rights. In arguing that procedural due process requires DEL to give her an individualized hearing, both Fields and the lead opinion conflate procedural and substantive due process. Fields' claim is not that there is a risk that the rule permanently disqualifying people with certain criminal convictions on the director's list will be erroneously applied to her. She admits that she has a conviction for a crime on the director's list. Instead, her argument is that this rule is overinclusive and therefore there is a risk that she will be deprived the right to provide childcare even though she may not pose a risk to children. Because there was no risk that the rule would be erroneously applied to her in the proceedings

---

[1] The Department of Early Learning is now known as the Department of Children, Youth, and Families. In the interests of clarity, I will refer to the Department as DEL, as it was known at the time of the events in this case.

1

below and because she was able to bring her constitutional challenge to the rule in court, her procedural due process rights were satisfied.

Fields' true claim is one of substantive due process. On that claim I would find that she has failed to meet the heavy burden of showing that the decision to permanently disqualify her from providing childcare services based on her conviction for the violent crime of attempted robbery is not rationally related to the legitimate government interest in protecting children. Accordingly, I would affirm the Court of Appeals.

## I. ANALYSIS

### A. Standard of review

Fields claims that former WAC 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 (2015) violates her procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution.[2] We review the Court of Appeals ruling on this issue de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

---

[2] I agree that we should not address Fields' state constitutional arguments as she did not sufficiently argue or brief them below. *See State v. Gunwall*, 106 Wn.2d 54, 62, 720 P.2d 808 (1986). I also agree that we should decline to address the equal protection arguments raised by amici in the first instance. *See City of Seattle v. Evans*, 184 Wn.2d 856, 861 n.5, 366 P.3d 906 (2015).

B.    Fields' procedural due process rights were not violated because there was no risk of the rule being erroneously applied to her

The due process clause of the Fourteenth Amendment to the United States Constitution has both substantive and procedural components. *See* 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.6(a)(i), (ii), at 722-25 (5th ed. 2012). Procedural due process sets limitations on the process the government must provide before depriving an individual of liberty or property interests. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Substantive due process, on the other hand, limits the rules that the government may adopt governing these deprivations. *See Sintra, Inc. v. City of Seattle*, 119 Wn. 2d 1, 21, 829 P.2d 765 (1992). Fields' right to practice her chosen profession is a liberty interest protected by due process. *Amunrud*, 158 Wn.2d at 219 (explaining that "pursuit of an occupation or profession is a liberty interest protected by the due process clause").

However, the hearings Fields has been given clearly satisfy the requirements of procedural due process. Procedural due process guarantees only that individuals have notice and the opportunity to be heard to contest whether the rule does apply to them, not whether it should. Fields had the opportunity to request reconsideration by the licensing supervisor, to appeal her disqualification to the Office of Administrative Hearings, and to challenge her disqualification in superior court as a

3

violation of her substantive due process rights.[3] The fact that she was not able to

challenge the constitutionality of this rule within the administrative process itself is

not a procedural due process violation.

Under *Mathews*, courts consider three factors in determining whether the

process afforded to an individual was sufficient to satisfy the due process clause:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

424 U.S. at 335; *see also City of Bellevue v. Lee*, 166 Wn.2d 581, 585, 210 P.3d

1011 (2009). These factors weigh against finding a procedural due process violation

in this case.

1.　　*Fields has a substantial private interest in her ability to work in childcare*

Fields' interest in pursuing childcare as a profession is not in dispute here.

Fields has demonstrated a passion for working in childcare and has invested heavily

in the pursuit of her chosen occupation. *See* Am. Suppl. Br. of Appellant at 6. The

---

[3] Because Fields admitted to the disqualifying robbery conviction and DEL elected to move for summary judgment on that ground, it is not clear from the record whether Fields' request for reconsideration has ever been considered on its merits. However, even in that request, Fields did not challenge the fact that she had a conviction for attempted second degree robbery.

fulfillment that she finds from this work is clear from the briefing and argument. *See id.*

The personal interest at stake here is particularly weighty because the decision made by DEL is not temporary and, instead, will permanently disqualify her from working in her chosen profession.[4] *See Amunrud,* 158 Wn.2d at 217 (noting the length of deprivation has a factor in weighing the private interest at stake). Therefore, the first *Mathews* factor weighs in favor of affording her substantial process. However, the process she was given here was sufficient because there was no risk of erroneous deprivation.

2.      *There is no risk of erroneous deprivation because Fields has admitted that she has a permanently disqualifying conviction*

The lead opinion claims that the inability of Fields to challenge her disqualification at the administrative level violated procedural due process. The lead opinion admits that "[t]here is no question that Fields received sufficient procedures" to ensure that the law as written was accurately applied to Fields. Lead opinion at 9.

---

[4] There was a discussion in oral argument and briefing about the possibility that Fields would be able to become qualified via the certificate of restoration of opportunity act (CROP), RCW 9.97.010 and .020. I agree with the lead opinion that this is pure speculation at this stage and is therefore not relevant to the decision we reach today. Fields does not currently have a CROP, and whether or not Fields would qualify for a CROP is an open question. CROP does not answer the question before us today because Fields is claiming that DEL violated her due process rights by failing to provide her with an individualized hearing based solely on her claim of rehabilitation. Whether or not the new Department of Children, Youth, and Families would provide her with an individualized hearing if she obtained a CROP does not resolve this question.

5

This is because the rule is not that DEL prohibits anyone who poses a danger to children from working at a licensed childcare facility. The rule is that DEL prohibits anyone convicted of a permanently disqualifying crime from working at a licensed childcare facility, and Fields has admitted that she has been convicted of such a crime.

However, the lead opinion believes that there was a high risk that DEL would disqualify Fields from providing childcare services erroneously, i.e., that she would be disqualified despite not posing a danger to children. The lead opinion contends that because Fields may not pose a danger to children, procedural due process demands that she be able to challenge the application of this rule to her in the administrative process. But "if DEL's regulations prevent [Fields] from pursuing her chosen occupation without a rational basis for doing so," lead opinion at 11-12, then the regulations violate *substantive* due process, not procedural due process. Whether or not this rule is arbitrary, advances the interests of the State, or is otherwise a good idea has no part in a procedural due process analysis:

> Procedural due process guarantees only that there is a fair decision-making process before the government takes some action directly impairing a person's life, liberty or property. *This aspect of the due process clauses does not protect against the use of arbitrary rules of law which are the basis of those proceedings.* It is only necessary that a fair decision-making process be used; the ultimate rule to be enforced need not be a fair or just one.

6

ROTUNDA & NOWAK, *supra*, at 722 (emphasis added).

Procedural due process does not require an agency to hear a constitutional challenge within the administrative process. In *Dixon v. Love*, the United States Supreme Court held that the decision to suspend the license of a commercial truck driver before there was a full hearing did not violate procedural due process, explaining that

> [u]nder the Secretary's regulations, suspension and revocation decisions are largely automatic. Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention. In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. *Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations.* Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations.

431 U.S. 105, 113-14, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977) (emphasis added) (footnote and citation omitted); *cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544 n.9, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (finding that an individualized hearing was required by due process when the reason for the employee's termination was arguable because it "turned not on the objective fact that he was an ex-felon or

the inaccuracy of his statement to the contrary, but on the subjective question whether he had lied on his application form").

Like in *Dixon*, the decision to disqualify Fields is automatic under DEL rules once she admitted that she had a conviction for attempted robbery. Fields is arguing for the right to appear in person in the administrative process to argue that DEL should show leniency and depart from its own rules. The United States Supreme Court rejected the argument that procedural due process grants this right in *Dixon*, and I would reject it here as well.

Similarly, in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 6, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), an individual admitted that he had a conviction that would require him to be listed on the sex offender registry as a sexually dangerous person. He claimed that due process gave him a right to a hearing to establish that despite his conviction, he was not dangerous. *Id.* The Court unanimously rejected his due process claim because the law at issue did not allow for individualized considerations of dangerousness. *Id.* at 7-8. The Court held that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. Fields also admitted that she had a disqualifying conviction but claims that due process gives her the right to a hearing to establish that despite her

conviction, she is not dangerous to children. Whether or not she is dangerous to children is not relevant under the current DEL rules, which expressly preclude any consideration of individual circumstances where a person is permanently disqualified due to a prior conviction for robbery. Former WAC 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(1), -0115(5), -0120(1) (2015). Therefore, applying *Doe*, Fields is not entitled to an individualized hearing because she cannot show that the facts she seeks to establish in that hearing are relevant under the statutory scheme.

The lead opinion claims that procedural due process requires DEL to allow Fields to make the argument that the rule violates her substantive due process rights during the administrative process. Lead opinion at 16. But Fields did have the opportunity to obtain review of her claim that the rule was unconstitutional as applied to her by filing in the superior court. The fact that she could not make this challenge, or any other constitutional challenge, during the administrative process does not violate her rights to procedural due process. Procedural due process does not require that administrative hearings consider all possible claims, such as whether a rule violates substantive due process as applied in a particular case. *See Amunrud*, 158 Wn.2d at 218 (explaining that the appellant was not denied meaningful review of his license suspension despite the fact that the State did not consider his unusual circumstances because he could file an appeal of the child support order that

indirectly led to the suspension with the court that issued it). This is a well-established principle of law:

> Although a state law might give an individual a right to some type of fair process or hearing, simply to complain about the effect of a law on the individual, the due process clause of the Fourteenth Amendment does not give an individual a right to a hearing if the person admits that the law applies to him. In other words, once an individual admits that a law applies to him, he has no basis for a procedural due process claim because any fair procedure would, by his own admission, result in a finding that the law applies to him. The individual in such circumstances may make a substantive claim against the law by challenging the rule of law created by the statute or regulation.

ROTUNDA & NOWAK, *supra*, at 732; *see also Reno v. Flores*, 507 U.S. 292, 308, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) (holding that a claim that a procedural system is unconstitutional because it does not allow individualized determination "is just the 'substantive due process' argument recast in 'procedural due process' terms").

Because Fields had the opportunity to make her substantive due process claim in superior court, she was not denied procedural due process.

> 3. *The State has a strong public interest in protecting children and the burden on the State to conduct individualized hearings would be great*

The lead opinion admits and the parties do not dispute that the State has a strong interest in protecting children who are taught or cared for in licensed facilities and that the State has an interest in avoiding undue administrative burdens. The lead

10

opinion fails to acknowledge the extent of the increase in the administrative burden on DEL based on its ruling today.

The burden of this decision on the government will be great. The lead opinion claims that because this is an as applied challenge, the result will be only that Fields is entitled to an individualized hearing. Lead opinion at 18. However, DEL claims in oral argument that it receives 21,000 applications each year. Wash. Supreme Court oral argument, *Fields v. Dep't of Early Learning*, No. 95024-5 (May 8, 2018), at 22 min., 06 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. It is inevitable with that number of applicants that others will also argue that they are rehabilitated despite their convictions for disqualifying crimes. As a consequence of the lead opinion's holding, DEL will have to make a choice each time a person claims to be rehabilitated. It can provide individualized hearings to everyone who makes this claim, including people with disqualifying convictions for child molestation and child rape, as Fields advocated for at oral argument. *See id.* at 8 min., 19 sec, 15 min., 27 sec. Or, it can deny individualized hearings to other applicants, in which case this court may decide that this denial violated procedural due process rights. By holding that Fields was denied procedural due process in this case, the lead opinion will require the agency to consider the argument that its own rule is unconstitutional as applied. DEL's

11

regulations do not allow parties to make constitutional claims in the administrative process for good reason: questions of constitutionality are best left to the courts.

By expanding the bounds of procedural due process in this way, the lead opinion invites a flood of litigation. Some applicants who are undisputedly disqualified under the rules will file suit, and a superior court will have to determine whether or not the applicant is in the same situation as Fields, or a sufficiently similar situation, to demand the same relief. The court will have to decide whether this person's circumstances are so unique that a failure to consider them would create a great risk of erroneous deprivation of the ability to work in childcare, without ever holding that DEL's disqualification rule violates substantive due process. Even if these decisions could be easily made, having to hear these new challenges would impose a large burden on DEL and the court system. We are required to consider this burden under the third prong of the *Mathews* test. DEL currently provides a clear list of disqualifying offenses and provides certainty and a quick system of resolution for many cases. The director's list may be both under- and overinclusive in certain instances, but it provides the clear advantage of avoiding the time and expense of individualized hearings in each of these cases. This is why "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews*, 424 U.S. at 344.

12

I would find that Fields' procedural due process claim fails because as the lead opinion admits, there is no risk of erroneously applying the law at issue here, and the burden on the State of granting individualized hearings would be great.

The lead opinion believes that there is high risk that this rule violates substantive due process as applied to Fields. *See* lead opinion at 12-16. I disagree. I now turn to a consideration of Fields' substantive due process claim.

C.     Fields' substantive due process claim cannot overcome the heavy presumption
       of constitutionality inherent in rational basis review

When assessing a substantive due process claim in the context of the right to pursue a trade or profession, we apply a rational basis standard of review. *See Amunrud*, 158 Wn.2d at 222. "Under this test, the challenged law must be rationally related to a legitimate state interest." *Id.* "The rational basis test is the most relaxed form of judicial scrutiny." *Id.* at 223. When applying the rational basis test, "we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994). "If it is 'at least fairly debatable' that the [government]'s conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th

13

Cir. 1994) (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994)).

The question in this case is whether there could be a rational basis for permanently disqualifying Fields based on her second degree robbery conviction without giving her an individualized hearing.

The legislature created DEL to "safeguard and promote the health, safety, and well-being of children receiving childcare and early learning assistance, which is paramount over the right of any person to provide care." Former RCW 43.215.005(4)(c) (2010). The parties do not dispute that this is a legitimate state interest.[5] The lead opinion also concedes that the State has a legitimate interest in avoiding the administrative burden of holding an individualized inquiry in every case. Lead opinion at 18.

The case then hinges on whether Fields can show that the decision to permanently disqualify her based solely on her conviction for attempted robbery, without an individualized hearing, is not rationally related to these legitimate state interests. Fields cannot show that it is not "'at least fairly debatable'" that this

---

[5] At times Fields' argument appears to suggest the rule is not related to DEL's mission in protecting children. *See Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 459, 722 P.2d 808 (1986) ("An agency's rules must be encompassed within its statutory framework."). Whether DEL's adoption of the rule exceeded its delegated authority was not briefed by the parties and is not before the court.

decision was rational. *See Halverson*, 42 F.3d at 1262 (quoting *Kawaoka*, 17 F.3d at 1234).

The lead opinion makes several claims about this conviction that go beyond the evidence before us. First, the lead opinion claims that there is no indication that any children were either victims of or witnesses to the attempted robbery. But there is also no indication that children were not around when the attempted robbery took place. There simply is not evidence pointing in either direction on this issue, and this factor should not guide our decision. The lead opinion also states that "because Fields was not convicted of first degree robbery, we know that she was not armed with a deadly weapon, did not display anything that appeared to be a deadly weapon, and did not cause any bodily injury to the victim." Lead opinion at 14. But this record does not show what Fields did not do. It goes too far to assume that just because Fields was convicted of only second degree robbery, her behavior could not have encompassed elements of more serious crimes.

Even if the lead opinion is correct as to the facts of this particular case, the legislature and this court have acknowledged that second degree "robbery is a most serious offense," *State v. Witherspoon*, 180 Wn.2d 875, 888, 329 P.3d 888 (2014); RCW 9.94A.030(33)(o). It is also on the list of crimes the legislature has designated as a crime against children or persons in RCW 43.43.830(7). An examination of the

15

statute makes clear why. A conviction for robbery requires a finding that the defendant "use[d] or threatened use of immediate force, violence, or fear of injury" to his or her victim. RCW 9A.56.190. This court has held that "'[t]he nature of the crime of robbery includes the threat of violence against another person.'" *Witherspoon*, 180 Wn.2d at 888 (quoting *State v. Rivers*, 129 Wn.2d 697, 713, 921 P.2d 495 (1996) (addressing the claim that the punishment for second degree robbery was cruel and unusual)).

It is not a guarantee that a robbery conviction means a person will pose a danger to children. It may be true that Fields in fact does not pose a danger to children today. But under the rational basis test, we need find only that DEL could have had a rational reason for acting as it did. In general, the disqualification regulations are a reasonable means to advance the State's legitimate interest. The lead opinion argues, however, that Fields' circumstances are so unique that there is a risk that it is irrational to apply this general rule to her. But Fields' circumstances are no different from many other second degree robbery cases. Most second degree robbery cases do not involve children, do not involve a deadly weapon, and do not cause bodily injury to the victim. Nevertheless, in order to be convicted, a court had to be satisfied that Fields herself "use[d] or threatened use of immediate force, violence, or fear of injury" to her victim. RCW 9A.56.190. It is not irrational for DEL to

16

conclude that because Fields has committed this kind of violent crime, she has demonstrated an impulsivity and a willingness to hurt another human such that she should be categorically barred from work in childcare facilities. Therefore, Fields has failed to meet her heavy burden under the rational basis test to show that DEL's decision to permanently disqualify her based on her robbery conviction is not even rationally related to the State's strong interest in protecting children and avoiding the administrative expense of holding an individualized hearing. I would hold that Fields has failed to show that this DEL rule is an unconstitutional violation of her substantive due process rights.

Because Fields had a meaningful opportunity to be heard in order to challenge the fact of her conviction, I would find that rights to procedural due process were satisfied. Because Fields is unable to show that her permanent disqualification based on her past conviction for robbery is not rationally related to the legitimate state interest in protecting children, her substantive due process claim must likewise fail. I respectfully dissent.

Fairhurst, C.J.